**GREENBERG TRAURIG, LLP**
ATTORNEYS AT LAW
SUITE 700
2375 EAST CAMELBACK ROAD
PHOENIX, ARIZONA 85016
(602) 445-8000

Jeffrey H. Wolf, Arizona Bar No. 011361
wolfj@gtlaw.com
*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Entertainment Networks, Ltd., a foreign corporation,<br><br>         Plaintiff,<br><br>v.<br><br>The Go Daddy Group, Inc., an Arizona corporation,<br><br>         Defendant. | **COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff Entertainment Networks, Ltd., for its complaint against Defendant The Go Daddy Group, Inc., alleges as follows:

**PARTIES**

1. Plaintiff, Entertainment Networks, Ltd. ("ENL"), is a foreign corporation conducting business in the United States and in this judicial district.

2. Defendant, The Go Daddy Group, Inc. ("Go Daddy"), is a corporation organized under the laws of the State of Arizona with its principal place of business located in Scottsdale, Arizona.

phx-fs1\1516092v01

## JURISDICTION AND VENUE

3. Jurisdiction in this Court is based on diversity of citizenship pursuant to 28 U.S.C. §1332(a)(2) because the plaintiff is a citizen of a foreign state and the defendant is an Arizona corporation. Additionally, the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.

4. Venue in this district is proper under 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the plaintiff's claims occurred in this judicial district and the defendant resides within this judicial district.

5. This court has personal jurisdiction over the defendant because its principal place of business is located within this judicial district.

## GENERAL ALLEGATIONS

6. ENL is an on-line gaming company which provides its services through a network of Internet domain websites (collectively referred to herein as the "Domains").

7. ENL's customers visit the Domains to set up a personal account and participate in on-line gaming activities.

8. Because its business is conducted exclusively on-line the proper registration and uninterrupted activation of the Domains are critical to the success of ENL's business.

9. Go Daddy is one of the world's largest domain name registrars. Go Daddy's services include domain registration services for websites and the resale of domains and domain-related products, among other products and services.

10. ENL engaged Go Daddy to provide domain registration services for the purpose of registering, activating and maintaining the connectivity of the Domains. At the peak of the parties' business relationship, Go Daddy registered approximately 960 domain names for ENL.

### The Go Daddy Domain Registration Agreement and Anti-Spam Policy.

11.  To utilize Go Daddy's services, customers visit www.godaddy.com and register by using an on-line click-through agreement with non-negotiable terms and conditions. *See* Go Daddy Domain Name Registration Agreement" ("DNRA"), a copy of which is attached as Exhibit 1.

12.  Go Daddy also requires its customers to adhere to the terms and conditions of policy statements it publishes on its website, such as the "Go Daddy Spam Policy" ("Spam Policy"), a copy of which is attached as Exhibit 2.

13.  Under the DNRA, Go Daddy was obligated to provide notice, either in writing or electronically, to ENL regarding any alleged breach of the agreement and then allow ENL ten (10) days to cure the breach. Only when an alleged breach became "unresolved" was Go Daddy permitted to deactivate the Domains.

14.  Section 6 of the DNRA provides, in relevant part, that:

> You agree that, in addition to other events set forth in this agreement, (1) Your ability to use any of the services provided by Go Daddy is subject to cancellation or suspension in the event there is an *unresolved breach* of this agreement....
>
> You agree that Your failure to comply completely with the terms and conditions of this agreement . . . may be considered by Go Daddy to be a material breach of this agreement and that Go Daddy may *provide You with notice of such breach either in writing or electronically* (i.e. email). In the event You do not provide Go Daddy with material evidence that You have not breached Your obligations to Go Daddy *within ten (10) business days,* Go Daddy may terminate its relationship with You and take any remedial action available to Go Daddy under the applicable laws. Such remedial action may be implemented without notice to you and may include, but is not limited to, canceling the registration of any of your domain names and discontinuing any services provided by Go Daddy to You. No fees will be refunded to You should Your agreement be cancelled or services be discontinued because of a breach. (Emphasis added).

15.  According to Go Daddy's Spam Policy,

> *Customers suspected to be using Go Daddy products and services for the purpose of sending spam are fully investigated.* Once Go Daddy determines there is a problem with spam, Go Daddy will take the

appropriate action to resolve the situation. (Emphasis added).

16. Paragraph 8 of the DNRA states in relevant part:

"You agree that Go Daddy's entire liability to you under this agreement, and your only remedy, in connection with any service provided by Go Daddy, to you under this agreement, and for any breach of this agreement by Go Daddy, shall be limited to the fees you paid to Go Daddy for the particular service in contention. Go Daddy and its agents and contractors shall not be liable for any direct, indirect incidental, special, or consequential damages resulting from the use of or inability to use any of Go Daddy's services or for the cost of obtaining substitute services. Because certain states do not permit the limitation of elimination of liability for certain types of damage, Go Daddy's liability shall be limited to the smallest amount permitted by law...."

### Go Daddy's Prior Course of Dealing in Handling Spam Complaints.

17. Because ENL is a large on-line business enterprise that generates a high volume of email traffic, there were certain instances during the parties' business relationship in which spam complaints had been made to Go Daddy regarding ENL or its affiliates.

18. In each of these instances, Go Daddy's Abuse Department notified ENL of its receipt of a complaint and provided ENL an opportunity to resolve the issue in accordance with Go Daddy's Anti-Spam Policy.

19. As a result of spam complaints Go Daddy received in January 2005, the complaints were investigated and ENL agreed to work with Go Daddy's Abuse Department to resolve the complaints. Additionally, Go Daddy agreed to send future spam complaints to ENL and in exchange ENL agreed to terminate any affiliates who were found to be sending spam.

### Go Daddy's Unannounced Suspension of the Domains.

20. On July 29, 2005, without advance notice or warning, Go Daddy unilaterally deactivated approximately 397 of the Domains.

21.    Go Daddy's deactivation of ENL's domain names caused ENL's customers to be unable to gain access the Domains for approximately 72 hours, beginning on a Friday evening, which is typically the start of ENL's busiest traffic in any given week.

22.    In a July 31, 2005 email to ENL, Ben Butler, Go Daddy's Abuse Department manager, claimed that the reason for the deactivation was because the Domains "endanger[ed] the connectivity of Go Daddy's network."

23.    According to Go Daddy, the connectivity of its entire network was jeopardized because the Domains were implicated in a Spamhaus[1] blacklist ("SBL').

24.    Go Daddy has nevertheless denied that it suspended the Domains due to either spam complaints or violations of the Anti-Spam Policy. Rather, Go Daddy has indicated that the Domains were deactivated due to ENL's violation of the DNRA.

25.    Go Daddy did not first conduct an investigation into the validity of the information on which Spamhaus' implication of ENL on the SBL was based before deactivating the 397 suspended Domains.

26.    Go Daddy failed to notify ENL of its receipt of information regarding ENL's implication on the SBL and therefore gave ENL no opportunity to resolve this issue prior to Go Daddy's unannounced deactivation of the Domains.

27.    Upon information and belief, ENL's implication on the SBL was based on spam sent by one or more of its affiliates which, if true, was in violation of ENL's own anti-spam policy.

28.    Although Go Daddy claims that the connectivity of its other email customers was at risk, upon information and belief, Go Daddy in fact was not facing any imminent risk of a connectivity failure when it shut down the Domains.

---

[1] Spamhaus is a European-based company that styles itself as a worldwide watchdog for email abuse on the Internet.

## COUNT ONE

### (Breach of Contract)

29. ENL incorporates each allegation set forth in the preceding paragraphs.

30. Prior to July 29, 2005, Go Daddy failed to provide ENL with notice of any alleged breach of the DNRA or its intention to deactivate the Domains as a result of any unresolved breaches of the DNRA.

31. Under the DNRA, ENL was entitled to written notice and an opportunity to cure any alleged breaches of the agreement.

32. Go Daddy's suspension of the Domains without written notice and without granting ENL a ten (10) day cure period constituted material breaches of the DNRA.

33. Alternatively, based on the parties' prior course of dealing and modification of the DNRA, ENL was entitled to receive advance notice of spam complaints or activities and an opportunity to terminate any of its affiliates found to be sending spam before the suspension or deactivations of any of the Domains.

34. As a direct and proximate result of Go Daddy's breach of the DNRA, ENL has been damaged in an amount to be proven at trial.

WHEREFORE, ENL demands judgment against Go Daddy as follows:

(a) For consequential damages in an amount to be established at trial;

(b) For an award of ENL's reasonable attorneys' fees pursuant to A.R.S. §12-341.01(A)

(c) For an award of ENL's taxable costs; and

(d) Such other relief the Court deems appropriate under the circumstances.

## COUNT TWO

### (Breach of Implied Covenant of Good Faith and Fair Dealing)

35. ENL incorporates each allegation set forth in the preceding paragraphs.

36. To the extent a binding contract existed between Go Daddy and ENL, the contract contained an implied covenant of good faith and fair dealing.

37. Pursuant to the implied covenant of good faith and fair dealing, Go Daddy was obligated to act in good faith and refrain from undertaking any actions which in their effect would deprive ENL of the benefits of the parties' contractual relationship.

38. Go Daddy breached its duty of good faith and fair dealing, as alleged herein, by, among other things, conducting an investigation that did not involve ENL, failing to notify ENL prior to suspending the Domains and suspending the Domains under the pretext that the connectivity of its entire network was in imminent jeopardy.

39. As a direct and proximate result of Go Daddy's breach of the implied covenant of good faith and fair dealing, ENL has been damaged in an amount to be proven at trial.

WHEREFORE, ENL demands judgment against Go Daddy as follows:

(a) For compensatory damages in an amount to be determined at trial;

(b) For an award of ENL's reasonable attorneys' fees pursuant to A.R.S. §12-341.01(A)

(c) For an award of ENL's taxable costs; and

(d) Such other relief the Court deems appropriate under the circumstances.

## COUNT THREE

**(Tortious Interference with Business Expectancies)**

40. ENL incorporates each allegation set forth in the preceding paragraphs.

41. ENL's customers exclusively retain its services by accessing the Domains.

42. Before participating in any on-line activities ENL's customers must establish a personal on-line account with one of the Domains and thereby form relationships which yield business expectancies from ENL's perspective.

43. Upon information and belief, Go Daddy was aware that ENL has the expectancy of generating revenues based on maintaining a high volume of on-line accounts.

44. Because ENL operates as an on-line business that is dependent on the functionality of its Domains, Go Daddy further understood that it was essential to ENL's success to have all of the Domains constantly active and functioning.

45. By unilaterally deactivating the Domains many of ENL's existing customers stopped patronizing the Domains or cancelled their existing contracts, which resulted in ENL's loss of significant revenues and profits.

46. By unilaterally deactivating ENL's Domains many of ENL's potential new customers were denied access the Domains and therefore could not open new on-line accounts.

47. Go Daddy's interference with ENL's business expectancies with its customers was improper.

48. As a direct and proximate result of Go Daddy's intentional interference with business expectancies, ENL has been damaged in an amount to be proven at trial.

WHEREFORE, ENL demands judgment against Go Daddy as follows:

(a)   For compensatory damages in an amount to be determined at trial;

(b)   For an award of ENL's taxable costs; and

(c)   Such other relief the Court deems appropriate under the circumstances.

## COUNT FOUR
### (Negligence)

49. ENL incorporates each allegation set forth in the preceding paragraphs.

50. At all relevant times, Go Daddy owed ENL a duty of care to maintain the registration of the Domains in a reasonably prudent manner.

51.   Go Daddy's conduct in unilaterally shutting off the Domains on the basis of information it received from Spamhaus, without first contacting ENL or involving ENL in its purported investigation of the alleged spam activity, constituted a breach of the duty of care it owed to ENL.

52.   As a direct and proximate result of Go Daddy's breach of its duty of care, ENL sustained damages in an amount to be proven at trial.

WHEREFORE, ENL demands judgment against Go Daddy as follows:

(a)   For special and compensatory damages in an amount to be determined at trial;

(b)   For an award of ENL's taxable costs; and

(c)   Such other relief the Court deems appropriate under the circumstances.

## COUNT FIVE

### (Declaratory Relief)

53.   ENL incorporates each allegation set forth in the preceding paragraphs.

54.   As previously alleged herein, Paragraph 8 of the DNRA purports to limit Go Daddy's "entire liability" under the DNRA to "to the fees [ENL] paid to Go Daddy for the particular service in contention."

55.   By this action, ENL seeks the recovery of damages greater than the value of the fees it paid to Go Daddy for its domain registration services.

56.   There exists an actual and justiciable controversy between the parties concerning the enforceability of the waiver provision of the DNRA.

57.   The Court should declare paragraph 8 of the DNRA unenforceable for, among others, the following reasons:

(a)   The liability waiver is void as unconscionable;

(b)   The liability waiver violates public policy because it allows Go

Daddy to contract away its negligence or other culpatory conduct;

    (c)    The entire provision is part of an unenforceable adhesion contract;

    (d)    The damages limitation of this provision is unenforceable and void as an illegal penalty because it was not a reasonable estimate of the potential damages at the time of contract formation; and

    (e)    The damages limitation violates public policy.

WHEREFORE, ENL prays for a declaratory judgment against Go Daddy:

    (a)    That the liability waiver be deemed void as unconscionable and against public policy;

    (b)    That the DNRA is an unenforceable adhesion contract; and

    (c)    That the damage limitation provision is void as an illegal penalty and/or is against public policy.

DATED this 30th day of December, 2005.

            GREENBERG TRAURIG, LLP

            By: /s/ Jeffrey H. Wolf
                  Jeffrey H. Wolf
                  *Attorneys for Plaintiff*

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000