**GREENBERG TRAURIG, LLP**
ATTORNEYS AT LAW
SUITE 700
2375 EAST CAMELBACK ROAD
PHOENIX, ARIZONA 85016
(602) 445-8000

Jeffrey H. Wolf, SBN 011361, wolfj@gtlaw.com
Aaron C. Schepler, SBN 019985, scheplera@gtlaw.com
*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Entertainment Networks, Ltd., a foreign corporation, | CV 05-4254-PHX-JAT |
| Plaintiff, | **SECOND AMENDED COMPLAINT** |
| v. | |
| GoDaddy.com, Inc., an Arizona corporation; The Spamhaus Project, a foreign limited liability company, | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff Entertainment Networks, Ltd., for its complaint against defendants GoDaddy.com, Inc. and The Spamhaus Project, alleges as follows:

**PARTIES**

1.  Plaintiff, Entertainment Networks, Ltd. ("ENL"), is a Belizean corporation with its principal place of business located in South Africa. Thus, ENL is a citizen of Belize and South Africa, both of which are foreign states. ENL conducts business in the United States and in this judicial district.

PHX 327672435v1

2. Defendant, GoDaddy.com, Inc. ("Go Daddy"), is a corporation organized under the laws of the State of Arizona with its principal place of business located in Scottsdale, Arizona. Go Daddy is, therefore, a citizen of the State of Arizona.

3. Defendant, The Spamhaus Project ("Spamhaus"), is, according to its current website (www.spamhaus.org), a United Kingdom limited liability company with its principal place of business located in London, England. Spamhaus is, therefore, a citizen of the United Kingdom, a foreign state.

## JURISDICTION AND VENUE

4. Jurisdiction in this Court is based on diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(2) because this matter is between citizens of a State and citizens or subjects of a foreign state. Specifically, plaintiff ENL is a citizen or subject of a foreign state, defendant Go Daddy is a citizen of the State of Arizona, and defendant Spamhaus is a citizen or subject of a foreign state. Additionally, the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.

5. Venue in this district is proper under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to ENL's claims occurred in this judicial district, and because defendant Go Daddy is a citizen of this judicial district.

6. This Court has personal jurisdiction over defendant Go Daddy because its principal place of business is located within this judicial district, and because Go Daddy caused events to occur within this judicial district giving rise to ENL's claims. This Court has personal jurisdiction over defendant Spamhaus because it does business in Arizona by, among other things, marketing its services to companies in Arizona, and because it caused events to occur within this judicial district giving rise to ENL's claims.

## GENERAL ALLEGATIONS

7. ENL is a company that owns a variety of intellectual property ("IP") and brands appropriate to online gaming ventures. ENL licenses its IP and brands, including

PHX 327672435v1

various Internet domain names (collectively, the "Domains"), to certain online gaming companies ("affiliates"). The customers of ENL's affiliates visit the Domains to set up a personal account and participate in online gaming activities.

8. Because the affiliates' business is conducted exclusively online, the proper registration and uninterrupted activation of the Domains are critical to the success of ENL's business.

9. Go Daddy is one of the world's largest domain name registrars. Go Daddy's services include domain registration services for websites and the resale of domains and domain-related products, among other products and services.

10. ENL engaged Go Daddy, on behalf of its affiliates, to provide domain registration services for the purpose of registering, activating and maintaining the connectivity of the Domains. At the peak of the parties' business relationship, Go Daddy registered approximately 960 domain names for ENL.

11. Spamhaus is a self-appointed "watch dog" for e-mail abuse on the Internet. Spamhaus publishes a database of domain names from which spam (*i.e.*, unsolicited commercial e-mail) allegedly originates. A number of Internet Service Providers ("ISPs") use this database, the so-called Spamhaus "block list" (or "SBL"), to identify offending domains, and to prevent e-mails originating from those domains from reaching their e-mail subscribers. The database is queriable in real time. Although use of the database is free to users with low levels of e-mail traffic, ISPs and other high-volume users must pay a fee for using the SBL.

12. Spamhaus uses heavy-handed tactics to advance its agenda of ridding the world of unsolicited commercial e-mail, or spam. For example, once Spamhaus identifies the sender of a spam e-mail, it indiscriminately places *every* Internet Protocol ("IP") address associated with the sender on its SBL, even though the e-mail originated from only one of the sender's IP addresses. Spamhaus also uses threats and intimidation to

achieve its objectives. Among other things, Spamhaus pressures ISPs who host an alleged spammer's domain or IP address to cease providing services to the alleged spammer. If the ISP refuses, Spamhaus threatens to list *all* of the domains and/or IP addresses hosted by the ISP on its SBL. Doing so could, in theory, have the effect of causing all outgoing e-mail originating from the ISP's subscribers to be blocked.

### Go Daddy's Domain Registration Agreement and Anti-Spam Policy

13. To utilize Go Daddy's services, customers visit www.godaddy.com or www.DomainsPricedRight.com (a site that is apparently controlled by Go Daddy), and register. To do so, the customer must agree to an online "click wrap" agreement with non-negotiable terms and conditions. *See* Go Daddy Domain Name Registration Agreement" ("DNRA").

14. Go Daddy also requires its customers to adhere to the terms and conditions of policy statements it publishes on its website, such as the "Go Daddy Spam Policy" ("Spam Policy").

15. Under the DNRA, Go Daddy was obligated to provide notice, either in writing or electronically, to ENL regarding any alleged breach of the agreement and then allow ENL ten days to cure the breach. Only when an alleged breach became "unresolved" was Go Daddy permitted to deactivate the Domains.

16. Section 6 of the DNRA provides, in relevant part, that:

> You agree that, in addition to other events set forth in this agreement, (1) Your ability to use any of the services provided by Go Daddy is subject to cancellation or suspension in the event there is an *unresolved breach* of this agreement….
>
> You agree that Your failure to comply completely with the terms and conditions of this agreement . . . may be considered by Go Daddy to be a material breach of this agreement and that Go Daddy may *provide You with notice of such breach either in writing or electronically* (i.e. email). In the event You do not provide Go Daddy with material evidence that You have not breached Your obligations to Go Daddy *within ten (10) business days,* Go Daddy may terminate its relationship with You and take any remedial

action available to Go Daddy under the applicable laws. Such remedial action may be implemented without notice to you and may include, but is not limited to, canceling the registration of any of your domain names and discontinuing any services provided by Go Daddy to You. No fees will be refunded to You should Your agreement be cancelled or services be discontinued because of a breach. (Emphasis added).

17.  According to Go Daddy's Spam Policy,

*Customers suspected to be using Go Daddy products and services for the purpose of sending spam are fully investigated.* Once Go Daddy determines there is a problem with spam, Go Daddy will take the appropriate action to resolve the situation. (Emphasis added).

18.  Paragraph 8 of the DNRA states in relevant part:

"You agree that Go Daddy's entire liability to you under this agreement, and your only remedy, in connection with any service provided by Go Daddy, to you under this agreement, and for any breach of this agreement by Go Daddy, shall be limited to the fees you paid to Go Daddy for the particular service in contention. Go Daddy and its agents and contractors shall not be liable for any direct, indirect incidental, special, or consequential damages resulting from the use of or inability to use any of Go Daddy's services or for the cost of obtaining substitute services. Because certain states do not permit the limitation of elimination of liability for certain types of damage, Go Daddy's liability shall be limited to the smallest amount permitted by law...."

<u>Go Daddy's prior course of dealing in handling spam complaints</u>

19.  Because ENL is a large online business enterprise that generates a high volume of e-mail traffic, there were certain instances during the parties' business relationship in which spam complaints had been made to Go Daddy regarding ENL or its affiliates.

20.  In each of these instances, Go Daddy's Abuse Department notified ENL of its receipt of a complaint and provided ENL an opportunity to resolve the issue in accordance with Go Daddy's Anti-Spam Policy.

21.  As a result of spam complaints Go Daddy received in or about March 2005, ENL agreed to participate in Go Daddy's abuse enforcement program (or "AEP"). Under the AEP, ENL agreed to provide Go Daddy with a contact person to whom it could

PHX 327672435v1

quickly report spam complaints. Michael Bryer, an independent consultant used by ENL, was the contact person whom ENL designated. Go Daddy said that it would send future spam complaints to Mr. Bryer and allow ENL to rectify the situation before taking any adverse action with respect to ENL's Domains. In exchange, ENL agreed to take whatever action was appropriate to resolve the issue, up to and including terminating any of ENL's affiliates who were found to be sending spam.

22. After ENL's enrollment in the AEP, Go Daddy began sending complaints about spam to Mr. Bryer, and ENL timely rectified the situation, all in accordance with the AEP. ENL assumed that all future spam complaints would be handled in this manner, and was ready, willing, and able to continue working with Go Daddy to resolve spam complaints.

### Go Daddy's unannounced suspension of the Domains

23. On July 29, 2005, without advance notice or warning, GoDaddy unilaterally deactivated approximately 397 of the Domains.

24. GoDaddy's deactivation of ENL's domain names caused ENL's affiliates' customers to be unable to gain access the Domains for approximately 72 hours, beginning on a Friday evening, which is typically the start of ENL's busiest traffic in any given week.

25. In a July 31, 2005 e-mail to ENL, Ben Butler, GoDaddy's Abuse Department manager, claimed that the reason for the deactivation was because the Domains "endanger[ed] the connectivity of Go Daddy's network."

26. According to Go Daddy, the connectivity of its entire network was jeopardized because the Domains were listed on Spamhaus' "block list."

27. Go Daddy has nevertheless denied that it suspended the Domains due to either spam complaints or violations of the Anti-Spam Policy. Rather, Go Daddy has indicated that the Domains were deactivated due to ENL's violation of the DNRA.

28. Upon information and belief, ENL's implication on the SBL was based on a single e-mail message sent by one or more of its affiliates which, if true, was in violation of ENL's own anti-spam policy.

29. Go Daddy did not conduct an investigation into the validity of the information on which Spamhaus relied before deactivating the 397 Domains.

30. Moreover, upon information and belief, the offending e-mail originated from a single IP address. Nevertheless, Spamhaus indiscriminately, and without any basis for doing so, listed on its SBL *all* IP addresses associated with the sender of the spam e-mail.

31. Go Daddy failed to notify ENL of its receipt of information regarding ENL's implication on the SBL and therefore gave ENL no opportunity to resolve this issue prior to Go Daddy's unannounced deactivation of the Domains.

32. By the same token, Spamhaus did not give the sender of the spam e-mail, ENL's affiliate, any notice that it intended to list *all* of the affiliate's IP addresses on the SBL. Further, it gave the affiliate no opportunity to explain its actions, to attempt to rectify the situation, or to otherwise avoid being placed on the SBL.

33. Although Go Daddy claims that the connectivity of its other e-mail customers was at risk, upon information and belief, Go Daddy was not, in fact, facing any imminent risk of a connectivity failure when it shut down the Domains.

34. In the alternative, and upon information and belief, Go Daddy's shutdown of the Domains was caused by direct or implied threats by Spamhaus. Specifically, Spamhaus threatened that, unless Go Daddy shut down all of the 397 Domains, Spamhaus would place all of Go Daddy's domains and/or IP addresses on the SBL.

35. ENL has suffered about $750,000.00 in damages due to the unauthorized deactivation of the 397 Domains. As a result of the shutdown, ENL was obligated to reimburse its affiliates for revenue that they would otherwise have generated from current

1  and prospective customers of their online gaming businesses during the period in which
2  the Domains were not accessible to their customers.

3      36.    This figure was calculated by comparing the revenues these particular
4  domains typically generated during the same 72-hour period (from Friday evening to
5  Monday evening) in prior weeks with the revenue that they generated during the July
6  2005 shutdown (which, of course, was zero).

**COUNT ONE**
**(Breach of Contract)**
**(Against defendant Go Daddy)**

9      37.    ENL incorporates each allegation set forth in the preceding paragraphs.

10     38.    One or more valid and enforceable contracts existed between ENL and Go
11 Daddy as of July 29, 2005.

12     39.    Prior to July 29, 2005, Go Daddy failed to provide ENL with notice of any
13 alleged breach of the DNRA or its intention to deactivate the Domains as a result of any
14 unresolved breaches of the DNRA.

15     40.    Under the DNRA, ENL was entitled to receive written notice and an
16 opportunity to cure any alleged breaches of the agreement.

17     41.    Go Daddy's suspension of the Domains without written notice and without
18 granting ENL a ten-day cure period constituted material breaches of the DNRA.

19     42.    Alternatively, based on the parties' prior course of dealing and modification
20 of the DNRA, ENL was entitled to receive advance notice of spam complaints or
21 activities, and an opportunity to terminate any of its affiliates found to be sending spam,
22 before the suspension or deactivations of any of the Domains.

23     43.    As a direct and proximate result of Go Daddy's breaches of the DNRA,
24 ENL has been damaged in an amount to be proven at trial.

25     WHEREFORE, ENL demands judgment against Go Daddy as follows:

26     (a)    For compensatory damages in an amount to be established at trial;

PHX 327672435v1

  (b) For an award of ENL's reasonable attorneys' fees pursuant to A.R.S. § 12-341.01(A)

  (c) For an award of ENL's taxable costs; and

  (d) Such other relief the Court deems appropriate under the circumstances.

### COUNT TWO
**(Breach of the Implied Covenant of Good Faith and Fair Dealing)**
**(Against defendant Go Daddy)**

44. ENL incorporates each allegation set forth in the preceding paragraphs.

45. To the extent a binding contract existed between Go Daddy and ENL, the contract contained an implied covenant of good faith and fair dealing.

46. Pursuant to the implied covenant of good faith and fair dealing, Go Daddy was obligated to act in good faith and refrain from doing anything that would deprive ENL of the benefits of the parties' contractual relationship.

47. Go Daddy breached its duty of good faith and fair dealing, as alleged herein, by, among other things, conducting an investigation that did not involve ENL, failing to notify ENL prior to suspending the Domains and suspending the Domains under the pretext that the connectivity of its entire network was in imminent jeopardy.

48. As a direct and proximate result of Go Daddy's breach of the implied covenant of good faith and fair dealing, ENL has been damaged in an amount to be proven at trial.

WHEREFORE, ENL demands judgment against Go Daddy as follows:

  (a) For compensatory damages in an amount to be determined at trial;

  (b) For an award of ENL's reasonable attorneys' fees pursuant to A.R.S. § 12-341.01(A)

  (c) For an award of ENL's taxable costs; and

  (d) Such other relief the Court deems appropriate under the

PHX 327672435v1

1    circumstances.

## COUNT THREE
### (Tortious Interference with Business Expectancies)
### (Against all defendants)

49. ENL incorporates each allegation set forth in the preceding paragraphs.

50. ENL's customers exclusively retain its services by accessing the Domains.

51. Before participating in any online activities ENL's customers must establish a personal online account with one of the Domains and thereby form relationships which yield business expectancies from ENL's perspective.

52. Upon information and belief, defendants were aware that ENL has the expectancy of generating revenues based on maintaining a high volume of online accounts.

53. Because ENL operates as an online business that is dependent on the functionality of its Domains, the defendants further understood that it was essential to ENL's success to have all of the Domains constantly active and functioning.

54. As a result of the defendants' wrongful acts, ENL's existing customers stopped patronizing the Domains or cancelled their existing contracts, which resulted in ENL's affiliates losing significant revenues and profits.

55. As a result of the defendants' wrongful acts, many of ENL's potential new customers were denied access the Domains and therefore could not open new online accounts. This resulted in ENL's affiliates losing significant revenues and profits.

56. The defendants' interference with ENL's business expectancies with its customers was improper.

57. As a direct and proximate result of defendants' intentional interference with business expectancies, ENL has been damaged in an amount to be proven at trial.

WHEREFORE, ENL demands judgment against defendants as follows:

(a)    For compensatory damages in an amount to be determined at trial;

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

(b) For an award of ENL's taxable costs; and

(c) Such other relief the Court deems appropriate under the circumstances.

### COUNT FOUR
### (Declaratory Relief)
### (Against defendant Go Daddy)

58. ENL incorporates each allegation set forth in the preceding paragraphs.

59. As previously alleged herein, Paragraph 8 of the DNRA purports to limit Go Daddy's "entire liability" under the DNRA to "to the fees [ENL] paid to Go Daddy for the particular service in contention."

60. By this action, ENL seeks the recovery of damages greater than the value of the fees it paid to Go Daddy for its domain registration services.

61. There exists an actual and justiciable controversy between the parties concerning the enforceability of the waiver provision of the DNRA.

62. The Court should declare paragraph 8 of the DNRA unenforceable for, among others, the following reasons:

(a) The liability waiver is void as unconscionable;

(b) The liability waiver violates public policy because it allows Go Daddy to contract away its negligence or other culpatory conduct;

(c) The entire provision is part of an unenforceable adhesion contract;

(d) The damages limitation of this provision is unenforceable and void as an illegal penalty because it was not a reasonable estimate of the potential damages at the time of contract formation; and

(e) The damages limitation violates public policy.

WHEREFORE, ENL prays for a declaratory judgment against Go Daddy:

(a) That the liability waiver be deemed void as unconscionable and against public policy;

-11-

(b)   That the DNRA is an unenforceable adhesion contract; and

(c)   That the damage limitation provision is void as an illegal penalty and/or is against public policy.

## COUNT FIVE
### (Defamation)
### (Against defendant Spamhaus)

63.   ENL incorporates each allegation set forth in the preceding paragraphs.

64.   By wrongfully listing as many as 397 of its Domains on its "block list," and thus labeling ENL and its affiliates as "spammers," Spamhaus made statements that were false, materially misleading, and defamatory.

65.   Spamhaus' insinuation that ENL and its affiliates are "spammers" constitute defamation *per se*, thereby relieving ENL of the need to plead or prove pecuniary damages, because statements are words that (i) impute the commission of a criminal offense; (ii) impute fraud, deceit, dishonesty, and reprehensible conduct in ENL's business; (iii) impute an inability to perform or want of integrity in the discharge of duties of office or employment; and/or (iv) tend to injure and prejudice ENL in its profession, trade or business, or impute lack of ability in its business.

66.   Spamhaus also says on its website that, "Spamhaus is an anti-spam organization working on the frontline to stop spammers, so it's no surprize [sic] that spammers hate us, just as thieves hate the police." In the same paragraph, Spamhaus goes on to say that "most spammers are criminally-minded sociopaths." These statements, comparing "spammers" to "thieves" and labeling them "criminally-minded sociopaths," constitute defamation *per quod*. An ordinary person reading them would conclude that, since ENL and its affiliates were listed as "spammers" on the "block list," they, too, must be "thieves" and "criminally-minded sociopaths."

67.   Spamhaus' false, materially misleading, and defamatory statements constitute unprivileged publications to third parties.

PHX 327672435v1

68. The statements were published to third parties throughout Arizona, the United States, and the world via the Internet, and remain accessible through the Internet by third parties, including ENL's affiliates, the affiliates' existing and potential customers, as well as potential affiliates of ENL.

69. Spamhaus was fully aware that the statements it made on its website concerning ENL and its affiliates were false.

70. In the alternative, Spamhaus made these statements with reckless disregard for their truth or falsity, knowing they had no reasonable basis in fact for making such statements.

71. The publication of these false and defamatory statements was neither in furtherance of, nor necessary for, any legitimate, non-privileged purpose.

72. Spamhaus' publication of false, materially misleading, and defamatory statements has caused, and continues to cause, ENL irreparable harm including, without limitation, damage to its reputation in the business community.

73. ENL has no adequate remedy at law.

74. Accordingly, ENL is entitled to an injunction preventing Spamhaus from recklessly making these and similar statements in the future.

75. Alternatively, and in addition to the irreparable injury described above, ENL has suffered actual or consequential damages in the form of attorneys' fees and lost revenues and profits.

WHEREFORE, ENL demands judgment against Spamhaus as follows:

    (a) For injunctive relief as set forth below;

    (b) For compensatory damages in an amount to be determined at trial;

    (b) For an award of ENL's taxable costs; and

    (c) Such other relief the Court deems appropriate under the circumstances.

PHX 327672435v1

## COUNT SIX
### (Injunctive Relief)
### (Against defendant Spamhaus)

76. ENL incorporates each allegation set forth in the preceding paragraphs.

77. In July 2005, Spamhaus wrongfully placed as many as 397 of ENL's Domains on its "block list" and engaged in other wrongful conduct that resulted in Go Daddy suspending each of the Domains.

78. As a result of Spamhaus' wrongful acts, ENL has been and continues to be irreparably harmed. The harm ENL has suffered and continues to suffer as a result of Spamhaus' wrongful acts (including, without limitation, damage to its reputation) is such that there is no adequate remedy at law that will make ENL whole.

79. Without this Court's intervention, ENL will continue to engage in wrongful acts against ENL, which will cause it to sustain further irreparable harm.

WHEREFORE, ENL requests that the Court enter an order as follows:

(a) That Spamhaus shall not take any action to cause e-mail sent by ENL or its affiliates, subsidiaries, or related companies owned or controlled by ENL (hereinafter referred to simply as "ENL") to be blocked, delayed, altered, or interrupted in any way (including, without limitation, by listing ENL on Spamhaus' ROKSO list, within an SBL listing on Spamhaus' website, using blacklisting technology in concert or conjunction with others, or taking any other action to cause any such interference) unless Spamhaus can demonstrate by clear and convincing evidence that ENL has violated relevant United States law. Such clear and convincing evidence may only be shown after proving ENL with an opportunity to review any alleged offending e-mail, including a review of the e-mail header and content (in its entirety), and providing ENL with an opportunity to show the offending e-mail was not sent in violation of United States law to the satisfaction of a reasonable person. If such clear and convincing evidence is

PHX 327672435v1

shown, then and only then may Spamhaus list the Internet Protocol (IP) address, and only the IP address, from which the offending e-mail was sent on its website.

(b)  That Spamhaus shall not list entire networks or ranges of IP addresses owned or operated by ENL simply because they are registered in the name or physical address of ENL without meeting the clear-and-convincing standard for the IP address in question.

(c)  Spamhaus shall not contact or cause others to contact any customers of ENL, or ISPs used by ENL, in an effort to cause the customers or ISPs to cease doing business with ENL.

(d)  Spamhaus shall not contact or cause others to contact any customers of ENL, or ISPs used by ENL, and assert or allege that they are "spammers" or other like term.

## JURY TRIAL

80.  ENL hereby demands a trial by jury of any and all issues or causes of action so triable.

DATED this 3rd day of October, 2006.

GREENBERG TRAURIG, LLP


By:  /s/ Aaron C. Schepler
Jeffrey H. Wolf
Aaron C. Schepler
*Attorneys for Plaintiff*

PHX 327672435v1

## CERTIFICATE OF SERVICE

☒ I hereby certify that on October 3, 2006, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Timothy J. Thomason, Tim.Thomason@mwmf.com
Kelly W. Lewis, Kelly.Lewis@mwmf.com
Attorneys for Defendant

☐ I hereby certify that on _____, I served the attached document by [insert method of service] on the following, who are not registered participants of the CM/ECF System:


/s/    Marie E. Sanchez

HX 327672435v1